FILED
CIVIL INTAKE
2021 MAR -5 PM 3: 52
JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF FAIRFAX

LESLIE ANNE WEINSTEIN,

  Plaintiff,

v.

BOOZ ALLEN HAMILTON INC.,

  Defendant.

Case No.: 2021 03367

JURY TRIAL DEMANDED

Serve: Registered Agent
C T CORPORATION SYSTEM
4701 Cox Road Suite 285
Glen Allen, VA, 23060

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, LESLIE ANNE WEINSTEIN (hereinafter "Plaintiff"), by counsel, and hereby files this Complaint for Damages against Defendant BOOZ ALLEN HAMILTON INC. (hereinafter "Defendant" or "BAH"), and respectfully alleges and states as follows:

### The Parties, Jurisdiction, and Venue

1. Plaintiff is a resident of Maryland and a Major in the United States Army Reserves.

2. Plaintiff is the recipient of the following medals and commendations from the United States Army: Global War on Terrorism Expeditionary Medal (2011), Joint Service Commendation Medal (2011 and 2015), Army Commanders Award for Civilian Service (2012), Army Commendation Medal (2012 and 2018), and Meritorious Service Medal (2018).

3. Defendant, Booz Allen Hamilton Inc. ("BAH"), is a Delaware corporation registered as a foreign corporation authorized to transact business in Virginia.

4. Jurisdiction is proper over Defendant, and venue is proper in this Court, pursuant to Virginia Code, § 8.01-262(1), as the claims asserted herein arose in the Commonwealth of Virginia, Fairfax County, and Virginia Code, § 8.01-328.1(A)(1). Defendant's headquarters and principal office are located in McLean, Virginia.

### Factual Background

5. At all times material to the allegations in this Complaint, Plaintiff was employed by Science Applications International Corporation (hereinafter "SAIC") but worked on her client's site 100% of the time.

6. Plaintiff's client was the Department of Defense Chief Information Officer (hereinafter "DoD CIO"), Workforce Division.

7. Plaintiff primarily supported the following government clients: Bobbie Sanders, DoD CIO Workforce Division Chief, and Patrick Johnson and Kimberly Wright, two of Ms. Sanders' direct reports.

8. The Workforce Division staff consisted of primarily Defendant's employees, with fifteen out of twenty-one contract personnel being employed by Defendant.

9. Within the Workforce Division, Plaintiff was a member of the Cyber Excepted Service team. This team was comprised of eight contractors, five of which are employed by BAH. Plaintiff was the sole SAIC employee in the Workforce Division.

### *Defamatory Conduct by Defendant's Employees*

10. In or around late February 2020, Plaintiff was contacted by an internal auditor within SAIC who advised Plaintiff that SAIC had received anonymous online complaints about some of her "outside activities" and requested explanations for the same.

11. The "outside activities" mentioned in these complaints were related to Plaintiff's fellowship with a Washington D.C. based think-tank, her two recently published articles, and a limited liability corporation that Plaintiff established in 2019.

12. The subjects of the complaints were all aspects of Plaintiff's professional and personal life that were known within the DoD CIO Workforce Division.

13. The SAIC auditor advised they were satisfied with Plaintiff's answers to their questions. However, the SAIC auditor mentioned that there was an additional allegation, which was the subject of a separate investigation and about which Plaintiff might be contacted by a different SAIC investigator. This involved an allegation of Plaintiff using classified information in pursuit of her "outside activities." Plaintiff fervently denied this baseless allegation to the SAIC auditor. After the call, Plaintiff immediately notified one of her government clients, Kimberly Wright, and her SAIC project manager of this investigation, neither of whom was aware of the investigation prior to learning about it from Plaintiff.

14. On or about February 25, 2020, Plaintiff received an email from a Special Agent (hereinafter "SA") with the DoD's Inspector General Criminal Investigative Service requesting that Plaintiff schedule a time to meet with her.

15. Plaintiff met with this SA and an additional Special Agent, and they explained that DoD received an anonymous online complaint at the end of January 2020 about Plaintiff.

They went on to explain that after reviewing all of Plaintiff's "activities" and comparing that to the Federal Acquisition Regulation, they concluded that Plaintiff had done nothing illegal.

16. The SAs commented that they were, in fact, "really impressed" with Plaintiff's work and explained that sometimes behaviors are "gray" but not illegal, but in Plaintiff's case her behavior was not even considered "gray."

17. The SAs advised that normally they would have closed the case and never disclosed the investigation to anyone, including Plaintiff, but for the fact that a second complaint was submitted. The second complaint raised concerns with Plaintiff's security clearance. That complaint was investigated by the DoD Central Adjudication Facility, and Plaintiff was cleared of any wrongdoing.

18. The second complaint was extremely concerning to the Special Agents and led them to believe that these complaints were likely a targeted attack on Plaintiff personally and professionally, rather than legitimate concerns regarding illegal activities. They warned Plaintiff that they believed it was someone close to her in her office who was submitting these complaints. The SAs advised Plaintiff that all investigations into her "activities" and security clearance were closed at that point, as she was found to have done nothing wrong.

19. On February 27, 2020, Plaintiff had a final call with the SAIC auditor who informed her that yet another anonymous online complaint had just been received that week about her attending a conference in her hometown.

20. Plaintiff had very recently purchased travel arrangements for this conference a few days prior to this final call and had discussed it in her office where BAH employees were present. The specific details contained in the complaint to SAIC must have come from

conversations held in Plaintiff's office, which were in the proximity of four BAH employees, two independent contractors, and one subcontractor.

21. The filing of these various complaints, likely by BAH employees, indicates that Plaintiff, an SAIC employee, was targeted by BAH employees in an attempt to paint her in an odious light in the eyes of consequential government clients.

22. Sometime during the week of March 9, 2020, during a BAH Workforce Division team meeting, Stephanie Shively, BAH project manager for one of the Workforce Division, told the team that Plaintiff was currently under investigation and that Plaintiff was being sent to the "front office" (*i.e.*, DoD CIO front office at the Pentagon) as a result of the investigation for repercussions and punishment associated with Plaintiff's alleged wrongful and illegal conduct.

23. At all times material to the allegations of this Complaint, Stephanie Shively (hereinafter "Ms. Shively") was an employee of Defendant.

24. Ms. Shively went on to tell the BAH team to be prepared for investigators to ask them questions and to "be careful" around Plaintiff.

25. Another BAH employee contacted Plaintiff the week of March 16, 2020 to inquire if she was actually under investigation and advised what had been said at the BAH meeting the week prior.

26. After learning of Ms. Shively's statements, Plaintiff informed two of her government clients, Patrick Johnson and Kimberly Wright, of what Plaintiff had just learned.

27. Mr. Johnson confronted Ms. Shively, who admitted that she did in fact make those statements to the BAH team.

28. This decision by a BAH employee to speak openly about damaging, already-concluded, erroneous, allegations regarding Plaintiff displayed a reckless disregard for Plaintiff's professional reputation and/or a malicious attempt at destroying her professional reputation and credibility. The statements made by Ms. Shively, a BAH employee, rise to the level of defamation *per se* in that they (1) impute to Plaintiff "the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished" and/or an "unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment"; and/or (2) "prejudice [Plaintiff] . . . her profession or trade." *Fleming v. Moore*, 221 Va. 884 (1981).

29. Such defamatory behavior by a BAH employee stands in stark contrast to the title of one of the "World's Most Ethical Companies," which Defendant proudly touts in its website.

30. As a result of the defamatory actions of Defendant's Employee, Plaintiff felt she had no choice but to leave the DoD CIO, Workforce Division, and the conduct of a BAH employee forced Plaintiff out of her place of work, caused her extreme emotional distress and other damages, and inflicted upon her a reluctance to engage with colleagues (and others) in dialogue.

31. The defamatory actions by Defendant's employee, Ms. Shively, will have a lifelong impact on Plaintiff emotionally as she interacts with colleagues and professionally as she attempts to rebuild her professional career. Plaintiff's life and career were in an almost constant state of limbo for approximately six consecutive weeks while these unfounded and malicious investigations ran their course. During this time, Plaintiff had no idea if her entire career would be ruined by these baseless allegations, but Plaintiff knew that these investigations would be a

stain on her record forever and these allegations would resurface for any public sector job that required a review of her security clearance. Ultimately, because of this uncertainty due to Defendant's employee's actions, Plaintiff made the extremely difficult to leave the only career she had ever known, in the public sector, where she expected to retire, for a different and new career in the private sector where she would have to reestablish herself and her corresponding qualifications in hopes of achieving the same level of distinguished success that Plaintiff earned in the public sector.

32. By virtue of vicarious liability/respondeat superior, Defendant bears responsibility for the actions of its employees, including Stephanie Shively.

*Legal Standards Applicable to Defamation and Defamation Per Se Counts*

33. The foregoing paragraphs, 1 through 32, inclusive, are incorporated herein and made an integral part hereof.

34. Plaintiff's common law rights include the "uninterrupted entitlement to the enjoyment of [Plaintiff's] reputation." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005) (citing *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 720 (Va. 1985)).

35. The Virginia Supreme Court went on to explain, "To be actionable, the statement must be both false and defamatory." *Id.*

36. The Virginia Supreme Court provided the standard for defamation in *Jordan v. Kollman*: "In Virginia, the elements of libel are (1) publication of (2) an actionable statement with (3) the requisite intent." 612 S.E.2d 203, 206 (Va. 2005).

37. With regard to intent, the Virginia Supreme Court held that for private individuals, "the plaintiff may recover upon proof by a preponderance of the evidence that

publication was false, and that the defendant either knew it to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based." *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 724-25 (Va. 1985).

38. The foregoing negligence standard "applies only to circumstances where the defamatory statement makes substantial danger to reputation apparent, a determination to be made by the trial judge" and "[w]here no such danger is apparent from the statement, the plaintiff may recover compensatory damages only upon proof of New York Times malice." 334 S.E.2d at 852-53.

39. The Virginia Supreme Court provided the standard for defamation per se in *Great Coastal Exp., Inc. v. Ellington*:

> At common law, the following defamatory words are actionable per se:
>
> (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished.
>
> (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society.
>
> (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment.
>
> (4) Those which prejudice such person in his or her profession or trade.

334 S.E.2d 846, 849 (Va. 1985) (citing *Fleming v. Moore*, 275 S.E.2d 632, 635 (Va. 1981).

40. The Virginia Supreme Court further held "that in an action brought by a private individual for defamatory words involving no matters of public concern, if the published words

are determined by the trial judge to be actionable per se at common law, compensatory damages for injury to reputation, humiliation, and embarrassment are presumed." *Id.* at 852.

41. Furthermore, the Supreme Court has determined that "[l]ibelous aspersions impugning honesty have long been accepted in the Commonwealth as potentially defamatory in nature. *See Adams [v. Lawson]*, 58 Va. at 255-57 (holding that a written charge advising another to 'quit lying' is actionable because it implies that he has been lying, and tends to injure the reputation of the party and to hold him as an object of contempt)." *Schaecher v. Bouffault*, 772 S.E.2d 589, 599 (Va. 2015).

42. Once words are determined to be actionable, a plaintiff must still show that the words were published and "prove negligence" for the requisite intent. *Great Coastal*, 334 S.E.2d at 853.

43. Punitive damages are also recoverable if a plaintiff shows "New York Times malice by clear and convincing evidence." *Id.*

44. The Virginia Supreme Court defined "New York Times malice" as a showing by a plaintiff "that the defendant knew the publication to be false or evidenced reckless disregard for the truth." *Id.* at 851.

### Count I: Defamation Per Se

45. The foregoing paragraphs, 1 through 44, inclusive, are incorporated herein and made an integral part hereof.

46. Sometime during the week of March 9, 2020, during a BAH Workforce Division team meeting, Stephanie Shively, BAH project manager for one of the Workforce Division, told

the team that Plaintiff was currently under investigation and that Plaintiff was being sent to the "front office" (*i.e.*, DoD CIO front office at the Pentagon) as a result of the investigation.

47. The statements made by Ms. Shively are demonstrably false, in that Plaintiff was not under investigation and/or being sent to "front office" (*i.e.*, DoD CIO front office at the Pentagon) as a result of the investigation of Plaintiff's alleged wrongful or illegal conduct.

48. Moreover, the statements made by Ms. Shively of and concerning Plaintiff were part of a concerted plan to undermine Plaintiff's reputation.

49. Ms. Shively had no interest or duty in making Defendant's published false statements about Plaintiff.

50. Ms. Shively has injured Plaintiff's reputation by making false statements which prejudice Plaintiff in her profession or trade.

51. Ms. Shively's statements, insinuations, posts and speeches of and about the Plaintiff were made with actual malice, in that Ms. Shively knew the published statements were false or evidenced reckless disregard for the truth when Ms. Shively published the statements.

52. Alternatively, Ms. Shively knew or should have known that Plaintiff was not under investigation and other false and defamatory things for which she was accused by Ms. Shively.

53. On information and belief, at all times material to the allegations set forth in this Complaint, Ms. Shively was an employee and/or agent of Defendant.

54. Ms. Shively's defamatory statements about Plaintiff were committed while acting as an employee and/or agent of Defendant.

55. The defamatory statements made by Ms. Shively were committed while in the

scope of her employment and/or agency and while furthering the business interests of Defendant.

56. As the employer and/or principal of Ms. Shively, Defendant is responsible for all of the acts committed by Ms. Shively while in the scope of her agency.

57. As a result of Defendant's defamatory statements, Plaintiff has suffered damages in excess of $500,000, for which she seeks recompense from Defendant.

58. Plaintiff is informed and believes that Ms. Shively's conduct has been at all times willful, malicious, and undertaken with the intent and purpose of inflicting severe economic and emotional injury on Plaintiff. As such, Ms. Shively's actions justify the imposition of punitive damages upon Defendant in the amount of $350,000.

### Count II; Defamation Per Quad

59. The foregoing paragraphs, 1 through 44, inclusive, are incorporated herein and made an integral part hereof, and Count II is pled in the alternative to Count I.

60. Sometime during the week of March 9, 2020, during a BAH Workforce Division team meeting, Stephanie Shively, BAH project manager for one of the Workforce Division, told the team that Plaintiff was currently under investigation and that Plaintiff was being sent to the "front office" (*i.e.*, DoD CIO front office at the Pentagon) as a result of the investigation.

61. The statements made by Ms. Shively are demonstrably false, in that Plaintiff was not under investigation and/or being sent to "front office" (*i.e.*, DoD CIO front office at the Pentagon) as a result of the investigation of Plaintiff's alleged wrongful or illegal conduct.

62. Moreover, the statements made by Ms. Shively of and concerning Plaintiff were part of a concerted plan to undermine Plaintiff's reputation.

63. Ms. Shively had no interest or duty in making Defendant's published false statements about Plaintiff.

64. Ms. Shively has injured Plaintiff's reputation by making false statements which prejudice Plaintiff in her profession or trade.

65. Ms. Shively's statements, insinuations, posts and speeches of and about the Plaintiff were made with actual malice, in that Ms. Shively knew the published statements were false or evidenced reckless disregard for the truth when Ms. Shively published the statements.

66. Alternatively, Ms. Shively knew or should have known that Plaintiff was not under investigation and other false and defamatory things for which she was accused by Ms. Shively.

67. On information and belief, at all times material to the allegations set forth in this Complaint, Ms. Shively was an employee and/or agent of Defendant.

68. Ms. Shively's defamatory statements about Plaintiff were committed while acting as an employee and/or agent of Defendant.

69. The defamatory statements made by Ms. Shively were committed while in the scope of her employment and/or agency and while furthering the business interests of Defendant.

70. As the employer and/or principal of Ms. Shively, Defendant is responsible for all of the acts committed by Ms. Shively while in the scope of her agency.

71. As a result of Ms. Shively's defamatory statements, Plaintiff has suffered damages in excess of $500,000, for which she seeks recompense from Defendant.

72. Plaintiff is informed and believes that Ms. Shively's conduct has been at all times willful, malicious, and undertaken with the intent and purpose of inflicting severe economic and emotional injury on Plaintiff. As such, Ms. Shively's actions justify the imposition of punitive damages upon Defendant in the amount of $350,000.

WHEREFORE, Plaintiff, LESLIE ANNE WEINSTEIN, prays that:

A. As to Count I:
   1. The Court award Plaintiff compensatory damages of $500,000 or in such amount as may be determined to be appropriate by the trier of fact; and,
   2. The Court award punitive damages of $350,000 or in such amount as the trier of fact deems appropriate.

B. As to Count II:
   1. The Court award Plaintiff compensatory damages of $500,000 or in such amount as may be determined to be appropriate by the trier of fact; and,
   2. The Court award punitive damages of $350,000 or in such amount as the trier of fact deems appropriate.

C. As to All Counts:
   1. Award Plaintiff costs of suit; and,
   2. Award such other and further relief as the nature of this case may require.

Plaintiff respectfully demands a trial by jury.

Respectfully submitted,
LESLIE ANNE WEINSTEIN
By Counsel

STEVEN KRIEGER LAW, PLLC
Attorney for Plaintiff Leslie Anne Weinstein
2200 Wilson Blvd. Suite 102
Arlington, VA 22201
(703) 831-7707
steven@stevenkriegerlaw.com

By: _____
Steven A. Krieger
Virginia State Bar No. 83244

## CERTIFICATE OF SERVICE

I hereby certify that notice is made that the proceedings are pending in the Fairfax Circuit Court and that upon the expiration of ten days after the giving of the notice and the expiration of the statutory period within which to respond, without further notice, the entry of a judgment by default as prayed for in the pleadings may be requested. I further certify that a copy of the foregoing *Complaint for Damages* was mailed, via USPS First Class Mail, to Defendant on March 5, 2021 to the following:

BOOZ ALLEN HAMILTON INC.
c/o Registered Agent
C T CORPORATION SYSTEM
4701 Cox Road Suite 285
Glen Allen, VA, 23060

_____
Steven A. Krieger